IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| SALVATORE NEWSUAN | : | No. 06-729-3 |

## MEMORANDUM

PRATTER, J.                                                                                                                                                          JULY 7, 2021

Salvatore Newsuan seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Newsuan's motion, which is opposed by the Government, is based on the COVID-19 pandemic and medical conditions that he believes place him at an increased risk of harm from the virus. For the reasons that follow, the Court denies the motion.

### BACKGROUND

#### I. Mr. Newsuan's Criminal Conduct

Mr. Newsuan is currently serving a sentence for committing a crime while on supervised release. In April 2014, about 10 months into his term of supervised release, Mr. Newsuan was identified by two eyewitnesses after he fired several gunshots into a residence in retaliation for a family altercation in South Philadelphia. He was arrested and charged with attempted murder and related offenses in state court. He pled guilty to aggravated assault and possession of a firearm by a prohibited person in March 2017. He was sentenced to five to 10 years' imprisonment. Several months later, in June 2017, this Court revoked Mr. Newsuan's supervision and sentenced him to 24 months' imprisonment to run consecutively to his state prison term.

Mr. Newsuan's original conviction in this case in 2007 was for conspiracy to commit wire fraud and identity theft, in violation of 18 U.S.C. § 371 (Count One); wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343, 1349, and 2 (Count 5); three counts of identity theft

1

and aiding and abetting, in violation of 18 U.S.C. §§ 1028 and 2 (Counts Seventeen, Twenty-Six, and Twenty-Eight); and three counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 1028A and 2 (Counts Thirty-Eight, Forty-Seven, and Forty-Nine). Mr. Newsuan and his eight co-defendants participated in a scheme to steal personal information, including the names, addresses, birth dates, and Social Security numbers, of multiple victims, which they then used to obtain "instant credit" and make purchases at stores in Pennsylvania, Delaware, and New Jersey. Mr. Newsuan's original sentence in 2007 was 92 months' imprisonment with three years of supervised release.[1]

Mr. Newsuan is currently serving his sentence at FCI Allenwood Medium with an anticipated release date of January 18, 2022. He has served approximately 14 months, with credit for good conduct time of approximately 4 months, for a total time served of approximately 18 months. He has not committed any disciplinary infractions during his time in custody.

## II. Mr. Newsuan's Request for Compassionate Release and Medical Records

On November 18, 2020, Mr. Newsuan requested compassionate release from the warden of his facility. That request was denied. The Government does not contest that Mr. Newsuan properly exhausted his administrative remedies before filing his motion with this Court.[2]

Mr. Newsuan's medical records show that he is 68 years old and, based on his height and weight, has a body mass index of around 32.5, which is defined by the Centers for Disease Control

---

[1] Mr. Newsuan has an extensive prior criminal history that involves acts of violence and identity theft. Doc. No. 394 at 3.

[2] Mr. Newsuan first filed a request for relief. Doc. No. 389. He later filed a motion for compassionate release. Doc. No. 393. The Court considers them together.

and Prevention (CDC) as obese (a BMI greater than 30 but less than 40).[3] He has also been diagnosed with type 2 diabetes with neuropathy, hypertension, and high cholesterol. He receives medications for these conditions, which are provided by the Bureau of Prisons, and he is routinely evaluated by medical personnel there. He is otherwise reportedly fully ambulatory and engages in all normal activities of daily living within his facility.

Mr. Newsuan moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). In support of his motion, he relies on his medical diagnoses and his confinement at FCI Allendale Medium, which he argues "presents a great risk of infection with COVID-19." Doc. No. 393 at 3.

### III. BOP's Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has stated that its "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[4] and it has adopted significant measures to protect the health of the inmates in its charge. These measures include severely curtailing visitation, limiting the movement of inmates, paying special attention to physical distancing, and screening and isolating new inmates. As directed by the Attorney General, the BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[5] Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, the BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that

---

[3] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention (May 13, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 7, 2021).

[4] BOP, *BOP Modified Operations* (last updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 7, 2021).

[5] This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement. 18 U.S.C. § 3624(c)(2).

3

emergency conditions will materially affect the functioning of the BOP. Pub. L. No. 116-136 § 12003(b)(2). In April 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning with facilities that have seen the greatest incidence of COVID-19 transmission thus far. The BOP has also undertaken efforts to vaccinate its staff members as well as all inmates. *See United States v. Roper*, No. 16-cr-335, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) ("Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate.").

Mr. Newsuan is currently housed at FCI Allenwood Medium—a medium security federal correctional institution with 1,146 inmates. *See* FCI Allenwood Medium, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/alm (last visited July 7, 2021). Currently, there are zero COVID-positive inmates and zero COVID-positive staff members there.[6] However, over the course of the pandemic, 503 inmates and 50 staff members have recovered from the virus.[7] There have been no reported deaths from the virus at the facility.[8] Furthermore, at the Allenwood complex, which also includes a low-security facility and a high-security penitentiary, the BOP has thus far fully vaccinated 420 staff members and 1,521 inmates, which represents about 58% of the complex's inmate population—not accounting for those inmates who have declined vaccination.[9]

### LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d

---

[6] The data is current as of July 7, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.
[7] *Id.* FCI Allenwood Medium has completed 1109 COVID-19 tests for inmates, of which 523 returned positive results. *Id.*
[8] *Id.*
[9] *Id.*

Cir. 2007). A defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf, which can only occur after the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In the event the moving defendant complies with the exhaustion requirement,[10] a court may reduce the term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction and that the reduction is consistent with the Sentencing Commission's applicable policy statements[11] but only after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal

---

[10] As stated above, the Government agrees that Mr. Newsuan has properly exhausted his administrative remedies.

[11] Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," the Court recently concluded that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at 398.

Moreover, there is a growing consensus among the circuit courts that the policy statement does not limit the Court's discretion to consider compassionate release under the First Step Act. *See, e.g., United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 117, 1180 (7th Cir. 2020).

conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020).

## DISCUSSION

Mr. Newsuan argues that he should be released under 18 U.S.C. § 3582(c)(1)(A)(i) because his medical conditions place him at an increased risk of harm were he to contract COVID-19. Left out of Mr. Newsuan's motion, however, is that he received his first dose of the Moderna COVID-19 vaccine on May 4, 2021.[12] Doc. No. 394 at 15. He was scheduled to receive his second dose shortly after the Government filed its opposition (which brought to the Court's attention Mr. Newsuan's vaccination status). Mr. Newsuan's objections to the Government's opposition were dated June 1, 2021 and docketed on June 7, 2021. However, Mr. Newsuan does not explicitly state in his objections that he received his first dose, despite the fact that he submitted his objections almost a month after he received his first dose. At this time, Mr. Newsuan has likely received his second dose and thus, because over two weeks have passed, he is fully vaccinated.

Even assuming that Mr. Newsuan's known chronic health conditions, particularly his type 2 diabetes and obesity, can be an extraordinary and compelling reason in light of the pandemic,[13]

---

[12] Mr. Newsuan left the date section (next to his signature) blank on his motion. Doc. No. 393. However, it was stamped May 4, 2021, stating that it was processed through Allenwood's mailing procedures on that date. It was docketed on May 11, 2021. It stands to reason that Mr. Newsuan knew he would be receiving his first dose of the COVID-19 vaccine on May 4, 2021—which was either shortly before, or on the same day, he submitted his motion to be mailed.

[13] The Government acknowledges that an inmate who not been offered a COVID-19 vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from the virus, and who is not expected to recover from that condition, constitutes a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." Doc. No. 394 at 13 (quoting U.S.S.G. § 1B1.13 cmt. n.1).

6

the Court finds that he has not shown an entitlement to compassionate release. The CDC has deemed certain people with specific underlying medical conditions and the elderly to be at a heightened risk of severe illness or death.[14] Relevant here, the CDC guidelines list obesity and type 2 diabetes as placing an individual at an increased risk of harm if that individual contracted the disease. The CDC also notes that age is an important indicator of risk, with older unvaccinated adults more likely to be hospitalized or die from COVID-19.[15] To be sure, this Court is not bound by the CDC's guidelines. But it, as well as many other district courts, have treated CDC guidance as reliably informative. *See United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (listing cases).

The Government contends that compassionate release is not warranted because, despite his age and the risk factors of diabetes, obesity, and hypertension, Mr. Newsuan has been vaccinated. As stated above, he received his first dose on May 4, 2021. Because it has been over two months since then, and the Government represents that Mr. Newsuan was scheduled to receive his second dose shortly after it filed its opposition, the Court finds it very likely that he has received his second dose, which means he is now fully vaccinated. Given the documented efficacy of the Moderna COVID-19 vaccine,[16] especially among adults aged 65 and older, the Court cannot find that Mr. Newsuan has demonstrated extraordinary and compelling reasons that would warrant

---

[14] *See People at Increased Risk*, Centers for Disease Control and Prevention (Apr. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited July 7, 2021).

[15] *See Older Adults*, Centers for Disease Control and Prevention (July 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 7, 2021).

[16] *See* Effectiveness of Pfizer-BioNTech and Moderna Vaccines Against COVID-19 Among Hospitalized Adults Aged ≥ 65 Years—United States, January – March 2021, Centers for Disease Control and Prevention (May 7, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm (last visited July 7, 2021).

compassionate release, as the chances of him experiencing any serious adverse risks related to COVID-19 having been fully vaccinated are low. *See United States v. Reed*, No. 18-cr-0078, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (denying motion for compassionate release where defendant "exercised the appropriate 'self care' against COVID-19 by receiving a vaccination" and was "no longer at a high risk of an adverse outcome from COVID-19"); *United States v. Hannigan*, No. 19-cr-373, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22, 2021) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release."); *Roper*, 2021 WL 963583, at *4 ("The risk posed to an inoculated [defendant] is not an extraordinary and compelling reason for his release.").

Regardless of whether extraordinary and compelling reasons exist—and the Court expresses its very serious doubts that they do to Mr. Newsuan in particular—resolving this motion requires the Court to take into consideration the limits imposed on it pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Setting aside Mr. Newsuan's medical conditions and the fact that he has been vaccinated, the Court agrees with the Government that Mr. Newsuan continues to present a danger to the community. The crux of Mr. Newsuan's motion and his objections to the Government's opposition is that he is 68 years old and that his underlying medical conditions put him at an increased risk for complications if he contracted COVID-19. As the Court previously noted, such fears are greatly diminished given Mr. Newsuan's vaccination status. As to whether he still poses a threat to the community, Mr. Newsuan only puts forth a single conclusory statement in his motion: "Mr. Newsuan is not a danger to the community." Doc. No. 393 at 6. The Court is not convinced.

The Court is especially troubled by Mr. Newsuan's demonstrated recidivism, as evidenced by his extensive criminal record and documented violation of supervised release. As explained above, while on supervised release, Mr. Newsuan fired shots into a house in retaliation for a dispute in which he was not personally involved. This incident took place in 2014, when Mr. Newsuan was 61, and suffering from some of the same conditions he now argues should entitle him to an early release.

As shown by his lengthy criminal record, which includes the commission of crimes while on probation or supervised release, and no mention in his motion of any steps he has taken to rehabilitate himself while in prison, it is clear Mr. Newsuan should serve the remainder of his sentence. He has also failed to show how his release, over six months before his anticipated release date for a violent crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* U.S.C. § 3553(a)(2)(A). In fact, immediate release would accomplish none of them. Accordingly, the Court declines to grant him early release. *See United States v. Henderson*, No. 18-cr-433, 2021 WL 409980, at *1 (E.D. Pa. Feb. 5, 2021) (denying compassionate release to 53-year-old inmate with several chronic medical conditions in light of two bank robberies and significant criminal history because having served only 30 months of a 48-month sentence was insufficient); *United States v. Bumbry*, No. 7:16-CR-30026, 2020 WL 4717911, at *1 (W.D. Va. Aug. 13, 2020) (denying compassionate release to diabetic inmate with 11 months remaining on an 80-month given his participation in violent street gang).

## Conclusion

For the foregoing reasons, the Court denies Mr. Newsuan's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE